**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

STURGEON STEWART,            )
                             )
            Plaintiff,       )   **CIVIL ACTION**
                             )
v.                           )   No. 08-3295-MLB
                             )
AGNES LINAWEAVER, et al.,    )
                             )
            Defendants.      )
                             )

**MEMORANDUM AND ORDER**

This case comes before the court on cross motions for summary judgment. (Docs. 27, 33). The motions have been fully briefed and are ripe for decision. (Docs. 28, 34, 35, 37). Defendants' motion is granted in part and denied in part and plaintiff's motion is denied for the reasons herein.

**I.    Facts**

Plaintiff Sturgeon Stewart is an inmate in the custody of the Kansas Department of Corrections (KDOC). Plaintiff is a practicing Rastafarian. In accordance with plaintiff's religion, plaintiff does not cut his hair. As a result, plaintiff's hair is in the style of dreadlocks. In December 2006, plaintiff was housed at the El Dorado Correctional Facility. Around that time, plaintiff learned that his mother had been diagnosed with cancer. Plaintiff requested a voluntary transfer to Lansing Correctional Facility in order to be closer to his mother. Plaintiff's request was approved.

On January 23, 2007, plaintiff began the processing required for

transfer to Lansing.  Sergeant Agnes Linaweaver[1] was working in the Admissions and Discharge area.  Plaintiff presented himself to Linaweaver in order to board a transport vehicle to Lansing. Linaweaver observed plaintiff's hair was in dreadlocks and could not be combed out.  Linaweaver abided by KDOC's Internal Management Policy and Procedure (IMPP) 12-110 which stated as follows:

> Prior to boarding a KDOC Transportation Unit vehicle, inmates may be required to comb out their hair as a secutiry [sic] procedure against contraband. To ensure that this procedure can be effectively accomplished, inmates shall not have hair braids, corn rows, or other hair arrangements wherein contraband can be easily hidden, and which cannot be readily combed out.

(Doc. 34 at 2).[2]

Linaweaver did not allow plaintiff to board the vehicle to Lansing because plaintiff was not willing to comb out his hair or cut off his dread locks.[3]  (Doc. 18, affidavit of Linaweaver).  Plaintiff returned to his cell.  Plaintiff filed a grievance on January 30 and requested that he be allowed to board the transport vehicle.  (Doc. 39, exh. C).  Plaintiff suggested that staff search his hair and check it with a metal detector.  Plaintiff's request was denied the same day.  Plaintiff submitted an appeal to Defendant Ray Roberts.  Roberts

---

[1] Formerly known as Agnes Beach.

[2] The policy currently allows for boarding of a transportation vehicle after being submitted "to a thorough shake down utilizing hand searching and hand held metal detectors. . . To ensure that this procedure can be effectively accomplished, inmates shall be ordered to remove hair braids or corn rows prior to boarding a transport vehicle."  (Doc. 18, exh. 4).  If an inmate fails to comply with the procedure, he will be issued a disciplinary report and his hair will then be searched by hand and with a metal detector.  Id.

[3] Due to the nature of dreadlocks, plaintiff was unable to comb out his hair.  To comply with the policy, plaintiff would have had to cut his hair.

received the grievance in his office on February 5. (Doc. 39, exh. E). Plaintiff voluntarily cut his hair on February 5. On February 6, plaintiff was transferred to Lansing. Roberts denied the grievance and plaintiff received the denial on February 7.

Plaintiff filed this action alleging a violation of his First Amendment right of free expression and his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).[4] Both parties have moved for summary judgment.

## II. Plaintiff's Pro Se Status

The court is mindful that plaintiff is proceeding pro se. It has long been the rule that pro se pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed. See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Hill v. Corrections Corp. of America, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. See Hall, 935 F.2d at 1110. Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant. See id. Plaintiff is expected to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See id.; Hill, 14 F. Supp.2d at 1237. A pro se litigant is still expected to follow fundamental procedural rules. Ogden v. San Juan

---

[4] Plaintiff's complaint states claims against both Roberts and Linaweaver solely in their individual capacities. (Doc. 1 ¶ 5). Plaintiff's complaint also alleges claims against an Officer Wilson. This person has not filed an answer and apparently has not been served.

County, 32 F.3d 452, 455 (10th Cir. 1994).

### III. Summary Judgment Standards

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Where, as here, the parties file cross motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. James Barlow Family Ltd. P'ship v. David M. Munson, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997) (citing Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981)).

**IV. Analysis**

  **A. First Amendment Violation**

It is well-settled that "[i]nmates ... retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed.2d 282 (1987). In order to allege a constitutional violation based on a free exercise claim, plaintiff must survive a two-step inquiry. First, plaintiff must first show that a prison regulation "substantially burdened . . . sincerely-held religious beliefs." Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007). Consequently, "[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." Snyder v. Murray City Corp., 124 F.3d 1349, 1352 (10th Cir. 1997). Second, defendants may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." Boles, 486 F.3d at 1182.

Turning to plaintiff's claim, the Tenth Circuit has recently decided how a plaintiff may establish that the government has placed a substantial burden on exercising his religion.[5]

> [A] religious exercise is substantially burdened. . . (a) when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief

---

[5] While the Tenth Circuit was addressing the substantial burden requirement under RLUIPA, it has since held that the same test is applicable for both RLUIPA and the First Amendment. See Strope v. Cummings, No. 09-3306, 2010 WL 2294524, *2 (10th Cir. June 9, 2010).

-5-

> or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

Abdulhaseeb v. Calbone, 600 F.3d 1301, 1315 (10th Cir. 2010).

Plaintiff asserts that the first and third examples apply in this case. Defendants acknowledge and the court agrees that plaintiff's religion is an accepted religion and one of the tenets of the Rastafarian religion is to not cut their hair. See May v. Baldwin, 895 F. Supp. 1398, 1403-1405 (D. Or. 1995)(discussing cases). Defendants argue, however, that IMPP 12-110 did not substantially burden plaintiff's religious beliefs because the transfer was voluntary and they did not force plaintiff to cut his hair. Plaintiff was only required to comb out his hair or cut it if he wanted to follow through with his transfer to Lansing.

There is no dispute that this was a voluntary transfer initiated by plaintiff and that ultimately plaintiff chose to cut his hair. KDOC was not requiring plaintiff to board the transport vehicle or cut his hair if he remained at El Dorado. Plaintiff also had no constitutional right to board the transport vehicle because prisoners have no right to dictate the location of their incarceration. Meachum v. Fano, 427 U.S. 215 (1976). Therefore, plaintiff's claim does not apply to the first example of substantial burden because defendants did not "require" plaintiff to cut his hair in violation of his religious beliefs.

In determining when the third example applies, the Tenth Circuit has explained a Hobson's choice as

> where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

450 U.S. at 717-18, 101 S. Ct. 1425. Similarly, in Sherbert, the Court stated,

> [h]ere not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forgo that practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand.

Abdulhaseeb, 600 F.3d at 1315-16.

Plaintiff argues that he was forced to make a choice to be near family and violate his religious beliefs or adhere to his beliefs and be separated from his family. While the court could not locate any authority similar to this case, the court finds that a voluntary transfer to be close to his cancer-stricken mother would be a benefit to plaintiff. The court further finds that plaintiff has established a dispute of fact as to whether defendants position on plaintiff's transfer placed "substantial pressure . . . to engage in conduct contrary to a sincerely held religious belief" in order to be in close proximity to his cancer-stricken mother. Abdulhaseeb, 600 F.3d at 1315.

Turning to the second factor, defendants may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." Boles, 486 F.3d at 1182. In order to determine whether defendants' policy is reasonably related to legitimate penological

interests, the court must evaluate the following:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

Kay v. Bemis, 500 F.3d 1214, 1219 (10th Cir. 2007) (citing Boles, 486 F.3d at 1181).

In reviewing the factors, the court is reminded that prison security is a compelling governmental interest. See Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005) ("It bears repetition ... that prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area.") Defendants have offered affidavits which state the security of the prisoners and officers on the transport vehicle is the reason for the policy. Defendants concern of smuggling contraband and weapons in dreadlocks is a valid concern which has been upheld in other courts. See e.g., May v. Baldwin, 109 F.3d 557, 564 (9th Cir. 1997). Plaintiff does not dispute that the security of the inmates is a valid legitimate government interest but instead argues that there is an alternative that would still allow the security of the transport vehicle.

As to the third and fourth factors, defendants argue that they would be forced to hire more guards to allow for a prisoner to be transported in dreadlocks. Defendants, however, do not address plaintiff's position regarding the least restrictive means. Plaintiff sought to board the transport vehicle and requested that his hair be

-8-

hand searched and a metal detector used. (Doc. 28, exh. C). This request was refused. Approximately one month after plaintiff's transport to Lansing, the IMPP policy was changed and allowed for transport of an inmate without combing out his hair.[6] The new policy states that the inmate will either be transported in a separate vehicle or a segregated area in the transport vehicle. Defendants offer no reason as to why this procedure was not feasible for plaintiff's transfer. The availability of a different procedure is a decisive factor. See Benjamin v. Coughlin, 708 F. Supp. 570, 573 (S.D.N.Y. 1989)(plaintiff established an alternative procedure which would not require him to cut his hair).

The court finds that plaintiff has established that a genuine dispute of material fact exists as to whether the policy of requiring plaintiff to cut his hair prior to boarding the transport vehicle was reasonably related to penological interests in light of the fact that there was an alternative means to provide security.

Therefore, defendants' motion for summary judgment on plaintiff's First Amendment claim is denied. Due to the disputed issues of fact, plaintiff's motion for summary judgment is also denied.

### Warden Ray Roberts

Defendant Roberts moves for summary judgment on plaintiff's First Amendment claim on the basis that plaintiff has failed to establish that he was personally involved. "Individual liability

---

[6] Defendants offer no explanation for the change in policy. Also, neither party has identified whether the new policy would be admissible at trial under the Federal Rules of Evidence. That issue needs to be presented to the court prior to trial.

under § 1983 must be based on personal involvement in the alleged constitutional violation." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). "[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." Id. Plaintiff has failed to establish any personal participation from Roberts. Roberts received plaintiff's grievance on the same day that plaintiff cut his hair. Plaintiff did not receive Roberts' denial of his grievance until two days later. Plaintiff has not submitted any evidence to support a conclusion that Roberts was aware of plaintiff's situation prior to plaintiff's decision to cut his hair on February 5. Moreover, plaintiff has not controverted the fact that Roberts only involvement with the transportation issue arose at the time he received the grievance. Therefore, Roberts' motion for summary judgment on plaintiff's First Amendment claim is granted.

## B. Qualified Immunity - Clearly Established Right

Because the court determines, when viewing the facts thus far presented in plaintiff's favor, that he has set forth a valid free exercise claim, the court must now define the right at issue and determine whether that right was clearly established at the time of the alleged misconduct. The Tenth Circuit has explained:

> [t]oo general a formulation [of the asserted right] would "convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. . . ." Conversely, structuring the inquiry too narrowly "would render the defense available to all public officials except in those rare cases in which a precedential case existed which was 'on all fours' factually with the case at bar."

Melton v. City of Oklahoma City, 879 F.2d 706, 729 n.37 (10th Cir.

-10-

1989) (citations omitted). In various factual contexts, courts have defined a plaintiff's right asserted pursuant to the free exercise clause of the First Amendment as the right to reasonably exercise one's religion. See Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210-11 n.4 (10th Cir. 1999) (noting that the "general right to the reasonable opportunity to exercise one's religion . . . best encompasses" defendants' refusal to accommodate the feeding requirements of Ramadan); Wares v. VanBebber, 231 F. Supp. 2d 1120, 1126-27 (D. Kan. 2002) (defining plaintiff's right as the right to a reasonable exercise of one's religion when plaintiff complained that defendants were interfering with his ability to observe the Jewish holiday of Sukkot); Garraway v. Hawk, 2002 WL 31256212, at *6 (D. Kan. Sept. 17, 2002) (defining plaintiff's right as the right to free exercise of religion in the absence of legitimate penological objectives for limiting a prisoner's ability to practice religion, when plaintiff complained that defendants interfered with his ability to perform ritual purification and prayer). Because as the Tenth Circuit observed in Melton, neither an overly narrow definition (such as the right to retain dreadlocks on a prison transport vehicle) nor an overly broad one (such as the right to First Amendment protections) comports with an effective application of the qualified immunity doctrine, the court thinks the right at issue in this case is properly defined as the right to reasonably exercise one's religion in prison. See Wares, 231 F. Supp. 2d at 1126 (noting that the constitutional right at issue in the case "can be characterized as narrowly as [plaintiff's] right to dine in a ceremonial booth for Sukkot or as broadly as his right to First Amendment protections").

-11-

Prior to the events at issue in this case, the Tenth Circuit observed that the right to reasonably exercise one's religion in prison was clearly established. See Makin, 183 F.3d at 1210 n.4 (noting that the "general right to the reasonable opportunity to exercise one's religion" is clearly established); see also Crocker v. Durkin, 159 F. Supp. 2d 1258, 1273 (D. Kan. 2001) (observing that a right is clearly established if recognized by the Supreme Court or by the Tenth Circuit). Therefore, the court finds that plaintiff's rights were clearly established at the time of the transfer and defendant Linaweaver's motion for summary judgment based upon qualified immunity must be denied.

**C. RLUIPA**

In addition to his First Amendment claim, plaintiff has also asserted a claim under RLUIPA. In relevant part, RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Because the court has determined that a question of fact exists as to whether Linaweaver has placed a substantial burden on the exercise of his religion, "the burden of proof shifts to the defendants to show the substantial burden results from a 'compelling governmental interest' and that the government has employed the 'least

restrictive means' of accomplishing its interest. <u>Abdulhaseeb v. Calbone</u>, 600 F.3d 1301, 1318 (10th Cir. 2010). The court has also determined that a question of fact exists as to whether the policy in effect at the time of plaintiff's transfer was not the least restrictive means of accomplishing the state's interest in inmate security.

Nevertheless, Linaweaver moves for summary judgment on the RLUIPA claim on the basis that RLUIPA only permits suits against governments. The Tenth Circuit has yet to address this legal issue. However, the circuits that have addressed the issue determined that individual capacity suits are not available under RLUIPA because individuals are not recipients of federal funds. <u>See</u> <u>Sossamon v. Lone Star State of Texas</u>, 560 F.3d 316, 329 (5th Cir. 2009); <u>Nelson v Miller</u>, 570 F.3d 868 (7th Cir. 2009)(holding that the RLUIPA does not allow for suits against prison officials in their individual capacity); <u>Smith v. Allen</u>, 502 F.3d 1255, 1275 (11th Cir. 2007)(holding individual officers are not recipients of federal funding such that "section 3 of RLUIPA - a provision that derives from Congress' Spending Power - cannot be construed as creating a private action against individual defendants for monetary damages"). The court agrees with the reasoning of those circuits and believes that the Tenth Circuit would also find that individual capacity suits are not available under RLUIPA.

Therefore, Linaweaver's motion for summary judgment on plaintiff's RLUIPA claim is granted.

**D. Declaratory Relief**

Finally, Linaweaver moves for summary judgment on plaintiff's

claim for declaratory relief on the basis that the claim is moot due to plaintiff's transfer to Lansing. Plaintiff does not respond to this argument. The court agrees with Linaweaver and finds plaintiff's claim for declaratory relief moot. Cf. Abdulhaseeb, 600 F.3d at 1311 (citing Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding that once prisoner was released from the prison system, neither declaratory nor injunctive relief would have any effect on defendants' behavior)).

**V.    Conclusion**[7]

Defendants' motion for summary judgment is granted in part and denied in part. (Doc. 33). Plaintiff's motion for summary judgment is denied. (Doc. 27). This case is to be assigned to a United States Magistrate Judge for the preparation of a pretrial order.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   2nd   day of August 2010, at Wichita, Kansas.

---

[7] Plaintiff filed a motion to strike the affidavit of Denison Coellner because the information in the affidavit was not supported by personal knowledge. (Doc. 29). Defendants did not oppose this motion. (Doc. 31). Plaintiff's motion is therefore moot.

-14-

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE