**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **STURGEON STEWART,**<br><br>**Plaintiff,**<br>**v.**<br><br>**(fnu) BEACH**, Officer El Dorado Correctional Facility, in her individual capacity,<br>**(fnu) WILSON**, Officer, El Dorado Correctional Facility, in his individual capacity,<br>**RAY ROBERTS**, Warden, El Dorado Correctional Facility, in his individual capacity<br><br>**Defendants.** | ) | **Case No. 08-3295-JAR-KGG** |

**MEMORANDUM AND ORDER**

Plaintiff Sturgeon Stewart filed this lawsuit seeking declaratory relief and asserting claims against Defendants Ray Roberts, Agnes Beach, and Thad Wilson solely on their individual capacity. Defendant sought relief under § 1983 for violations of his First Amendment free exercise rights and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") for violation of his statutory rights, claiming that Defendants violated his rights when they forced him to cut his hair despite the fact that they knew his religious tenets forbid him from doing so. After a lengthy procedural background, the only claims remaining in this litigation are the § 1983 individual capacity claims against Defendants Beach and Wilson.

This matter is currently before the Court on the remaining Defendants' Motion to Dismiss (Doc. 62). The motion is fully briefed, and the Court is prepared to rule. As explained more fully below, Defendants are entitled to qualified immunity for the § 1983 individual capacity claims because it was not clearly established at the time of the challenged conduct that their conduct violated Plaintiff's rights, and thus the Court grants Defendants' motion to dismiss.

## I. Procedural Background

After filing his Complaint, Plaintiff relied on the United States Marshal's Office to execute service on Defendants. Defendants Roberts and Beach waived service of process, but Defendant Wilson did not waive service of process and was not formally served. On March 3, 2010, Plaintiff filed a motion for summary judgment. On April 28, 2010, Defendants Beach and Roberts filed a motion for summary judgment. Judge Belot denied Plaintiff's motion and denied Defendants' motion in part and granted it in part. Judge Belot dismissed the declaratory judgment claim as moot, dismissed Plaintiff's RLUIPA claim, and dismissed all claims against Defendant Roberts. Judge Belot, however, denied Defendant Beach summary judgment on the § 1983 First Amendment claim, finding that Defendant Beach was not entitled to qualified immunity on the individual capacity claim and that a genuine issue of material fact existed as to whether Defendant Beach had violated Plaintiff's constitutional rights. After Judge Belot's ruling the only claim remaining was the individual capacity claim against Defendant Beach under § 1983 for the First Amendment violations and the individual capacity claims against Defendant Wilson, who had not yet been served.

The case was then reassigned. After the case was reassigned, Defendant Wilson was properly served and a new scheduling order was issued. On October 17, 2011, Defendants Wilson and Beach moved to dismiss. In Plaintiff's response to Defendants' motion, Plaintiff concedes that the RLUIPA claim was dismissed by Judge Belot and he does not attempt to assert that claim against Defendant Wilson: "The RLUIPA claim was dismissed with Judge Belot finding that individual capacity suits were not available under RLUIPA."[1] Although Judge Belot

[1]Doc. 65, at 3.

did not dismiss the RLUIPA claim against Defendant Wilson because he had not yet been served, the Court finds that Plaintiff treats this claim as dropped, and the Court therefore dismisses it. Thus, the only remaining claims that the Court must decide on Defendants' motion to dismiss are the § 1983 individual capacity claims against Defendants Beach and Wilson.

## II. Legal Standard

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[4] but requires more than "a sheer possibility."[5] For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6] The court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[2]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

[5]*Id.*

[6]*Id.* at 1949–50.

[7]*Id.* at 1950.

defendant is liable for the misconduct alleged."[8]

**III. Factual Allegations**

The following facts are alleged in Plaintiff's Complaint and construed in the light most favorable to Plaintiff.[9] In 2006, Plaintiff, a practicing Rastifarian, was an inmate at El Dorado Correctional Facility. Plaintiff learned that his mother was diagnosed with cancer in December 2006, and he requested an emergency transfer to Lansing Correctional Facility to be closer to her. On January 23, 2007, Plaintiff was being processed for transfer at the El Dorado Correctional Facility. Defendant Beach started examining Plaintiff's dreadlocks. Officer Wilson then entered and asked Plaintiff if he was going to cut off his dreadlocks. Plaintiff informed the officers that he was a practicing Rastafarian and could not cut his hair due to his religious tenets. Officer Wilson cancelled the transfer and sent Plaintiff to administrative segregation. The prison had a policy that prohibited inmates from transferring if they had hairstyles that could conceal contraband and could not be combed out. Plaintiff informed the prison officials, in person and through the grievance procedures, that they could check each of his dreadlocks and scan them with a metal detector to check for contraband. The prison officials denied his requests and grievances. The officials informed Plaintiff that he would not be transferred unless he cut his dreadlocks. Because Plaintiff sought to be transferred to Lansing to be closer to his mother, he felt he had no choice but to cut his hair. On February 5, 2007, Plaintiff cut his hair in violation of his religious tenets.

---

[8] *Id.* at 1949.

[9] Doc. 1.

## IV. Discussion

Defendant seeks to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim because the alleged facts do not establish a constitutional violation and because Defendants Beach and Wilson are entitled to qualified immunity for their conduct. Defendant Wilson also seeks to dismiss because he was not served within the applicable statute of limitations. Plaintiff opposes the motion, arguing that he has alleged facts showing that a constitutional violation occurred, that the officers are not entitled to qualified immunity because the constitutional violation was clearly established, and that the claim is not time-barred because Plaintiff had to rely on the United States Marshals to serve Defendant Wilson. Additionally, Plaintiff argues that the Court cannot determine whether Plaintiff failed to state a claim for relief against Defendant Beach because that issue has already been decided by a previous order.

Because the Court finds that qualified immunity shields both remaining Defendants from liability, the Court need not address Defendants other arguments for relief in their motion to dismiss. But before going into the merits of Defendants' qualified immunity argument, the Court will address Plaintiff's argument that the Court can only determine whether Defendant Wilson, and not Defendant Beach, is entitled qualified immunity.

### A. Revisiting Qualified Immunity

Before Defendant Wilson was served, Judge Belot ruled on the parties' summary judgment motions. The case was then reassigned. And after Defendant Wilson was properly served, both Defendant Wilson and Defendant Beach moved to dismiss. Plaintiff argues that this Court cannot determine whether Defendant Beach is entitled to qualified immunity because that

issue was already decided in Judge Belot's ruling upon Defendant Beach's summary judgment motion. Plaintiff maintains that the Court should not reconsider that decision because a court should only be allowed to revisit determinations made earlier in this case if there is (1) an intervening change in the controlling authority, (2) newly available evidence, or (3) a clearly erroneous prior decision that would result in manifest injustice. Under the law-of-the-case doctrine, "'when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'"[10] When the law-of-the-case doctrine applies, Plaintiff is correct that the three circumstance listed above are generally the only circumstances that warrant departure from the prior ruling.[11] But the doctrine does not apply to rulings revisited before entry of a final judgment.[12] Unless a party is prejudiced by lack of notice and the opportunity to be heard on the new ruling, "district courts generally remain free to reconsider their earlier interlocutory orders."[13] "This principle remains true even when a case is reassigned from one judge to another in the same court."[14] Here, Plaintiff had adequate notice opportunity to brief the issue. Thus, Plaintiff is not prejudiced, and this Court is free to decide whether both Defendant Wilson and Defendant Beach are entitled to qualified immunity on the § 1983 claim.

**B. Qualified Immunity**

Section 1983 provides a cause of action for the deprivation of rights by any person acting

---

[10]*Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (quoting *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)).

[11]*See id.* (citing *Wilson v. Meeks*, 98 F.3d 1247, 1250 (10th Cir. 1996)).

[12]*Id.*

[13]*Id.*

[14]*Id.*

under the color of a "statute, ordinance, regulation, custom, or usage or any State or Territory."[15] Allowing a person to seek damages in an individual capacity suit against the offending parties is a vital component for vindicating cherished constitutional rights.[16] In certain circumstances, however, the individual offending party is entitled to qualified immunity from damages liability under § 1983.[17] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[18] To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff shows (1) that the official violated a statutory or constitutional law and (2) that the right the official violated was "clearly established" at the time of the challenged conduct.[19] Qualified immunity is a defense that must be pleaded by the defendant, but once the defendant raises it, the burden of proof is on the plaintiff.[20] Unless the plaintiff proves both prongs, the official is entitled to qualified immunity.[21] Courts have discretion to decide which of the two prongs of the analysis to address first.[22] Here, the Court need not determine whether the prison officials actually violated Plaintiff's free exercise rights by requiring him to cut his hair because, even if they did, the right was not "clearly established" at the time of the challenged conduct.

---

[15]42 U.S.C. § 1983.

[16]*Gomez v. Toledo*, 446 U.S. 635, 639 (1980).

[17]*Id.*

[18]*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

[19]*Id.* at 2080.

[20]*Gomez*, 446 U.S. at 640.

[21]*See al-Kidd*, 131 S. Ct. at 2080.

[22]*Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A government official violates clearly established law when the contours of a right at the time of the challenged conduct are sufficiently clear so that "every 'reasonable official would have understood that what he is doing violates that right.'"[23] When the clearly established requirement is "properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"[24] Generally, to be considered clearly established, a Supreme Court or Tenth Circuit decision must be directly on point showing a statutory or constitutional right to be free from the challenged conduct.[25] If no Supreme Court or Tenth Circuit precedent addresses the right at issue, "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[26] When comparing the official's conduct with prior precedent to determine if the right is clearly established, "the facts of the cases compared need not be identical, [but] they must be sufficiently analogous to satisfy the particularized context necessary to support liability."[27] Put differently, the "existing precedent must have placed the statutory or constitutional question beyond debate."[28]

Before determining whether the right at issue here was clearly established, the Court must first define the right. The United States Supreme Court has repeatedly warned courts not to

[23]*Id.* at 2083.

[24]*Id.* at 2085 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[25]*Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

[26]*Id.* (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)).

[27]*Edison v. Owens*, 515 F.3d 1139, 1148 (10th Cir. 2008) (citing *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007)).

[28]*al-Kidd*, 131 S. Ct. at 2083.

define a right too broadly for purposes of the clearly established analysis.[29] Most recently, the Supreme Court, in *Ashcroft v. al-Kidd*, explained that if the right is defined at a high level of generality, it "is of little help in determining whether the violative nature of particular conduct is clearly established."[30]

If, for example, the Court defined the right here as the right to reasonable free exercise of religion in prison, a reasonable officer may have difficulty determining whether particular conduct violates that right.[31] Certainly, it is clear that prisoners have free exercise rights in prison, and yet prison officials are allowed to limit those rights if the limitations are reasonably related to a legitimate penological interest.[32] Stating that prisoners have a right to free exercise of religion in prison does not put officials on notice of whether specific conduct limiting free exercise of religion, such as requiring inmates to cut their hair, falls within the category of restrictions reasonably related to a legitimate penological interest or falls within the category of unconstitutional limitations.[33] Thus, defining the right as the freedom to practice religion in prison is too broad to "help in determining whether the violative nature of particular conduct is clearly established."[34]

---

[29]*Id.* at 2084 (citing *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004); *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987); *Sawyer v. Smith*, 497 U.S. 227, 236 (1990)) .

[30]*Id.*

[31]*See Justus v. Maynard*, 25 F.3d 1057, 1994 WL 237513, at *2 (10th Cir. June 3, 1994) (stating that defining the right at issue as "an inmate's general right to religious freedom within the constraints of a prison system" was too broad).

[32]*Turner v. Safley*, 482 U.S. 78, 89 (1987).

[33]*See Justus*, 1994 WL 237513, at *2.

[34]*See al-Kidd*, 131 S. Ct. at 2084.

Instead, the Court will look at whether it was clearly established that the officers violated Plaintiff's First Amendment free exercise right by requiring him to cut his hair for security reasons. The Court is mindful that this definition is much more narrow than the right to reasonable free exercise of religion in prison and that "structuring the inquiry too narrowly 'would render the defense available to all public officials except in those rare cases in which a precedential case existed which was on all fours factually with the case at bar.'"[35] But this definition does not conflict with the warning that structuring a case too narrowly will preclude all precedent from being applied. Indeed, the contours of this right have been sufficiently explored by courts throughout the nation in analogous cases. Given the numerous analogous cases, the Court can examine the precedent created by those cases to determine if Defendants violated Plaintiff's clearly established rights.

In doing so, the Court must first look to see if there is a Supreme Court or Tenth Circuit decision on point that is sufficiently analogous.[36] Plaintiff has shown no analogous Supreme Court case supporting his view, and the Court has similarly found none. The Tenth Circuit, however, has touched on this issue in several cases.[37] In *Hall v. Bellman*, the Tenth Circuit upheld a regulation at a temporary detention center that required all inmates to cut their hair upon entering the facility.[38] The prison's justification was that the regulation prevented "inmates from hiding weapons in long hair and from easily changing their appearance should they escape,

---

[35]*Melton v. City of Okla. City*, 879 F.2d 706 (10th Cir. 1989) (quoting *Dartlands v. Metro. Dade Cnty*, 681 F. Supp. 1539, 1546 (S.D. Fla. 1988)).

[36]*Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

[37]*See Justus*, 1994 WL 237513; *Longstreth v. Maynard*, 961 F.2d 895 (10th Cir. 1994); *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991); *Hall v. Bellman*, 935 F.2d 1106 (10th Cir. 1991).

[38]935 F.2d at 1114.

and it facilitates good hygiene."[39] In *Mosier v. Maynard*, however, the Tenth Circuit found that a genuine issue of fact existed as to whether prison officials had violated the defendant's free exercise rights by denying him an exemption to the prison code that required him to cut his hair.[40] In *Mosier*, the court distinguished *Hall*, stating that *Hall* involved a Rule 12(b)(6) motion instead of a summary judgment motion, concerned a challenge to the grooming code instead of the application of the exemption policy to the grooming code, and involved a temporary detention center instead of a prison.[41] In *Longstreth v. Maynard*, the Tenth Circuit again revisited the issue, consolidating on appeal three cases involving prison grooming regulations for three different plaintiffs.[42] For one of the plaintiffs, the court found that the prison's grooming regulation was facially valid but remanded the case back to the district court to determine whether the exemption policy as applied to the individual plaintiff was reasonable.[43] The Tenth Circuit specifically refused to make a finding on the ultimate issue of constitutionality, stating that the determination necessitated a highly factual inquiry.[44] For the other two plaintiffs, the court remanded the cases and declined to make any finding on the constitutionality of the prison regulations but stated that the plaintiffs' claims raised serious and substantial questions.[45] With

[39] *Id.*

[40] 937 F.2d at 1527.

[41] *Id.* at 1524.

[42] 961 F.2d 895. One of the cases involved Mosier, whose case had come back to the circuit court after remand to the district court. *Id.* at 898.

[43] *Id.* at 902.

[44] *Id.*

[45] *Id.* at 903.

this consolidated appeal, the Tenth Circuit clarified that, depending on the specific facts of a case and how the regulations were applied, grooming regulations could infringe on prisoners' First Amendment rights, but at the same time, the Tenth Circuit also illustrated that in some circumstances prison grooming regulations are valid.

In *Justus v. Maynard*, the Tenth Circuit again analyzed a claim of one of the prisoners that was a plaintiff in *Longstreth* to decide whether the individual defendants were entitled to qualified immunity—the exact issue here.[46] The court discussed whether at the time of the officials' conduct, the law regarding the constitutionality of prison grooming codes was clearly established.[47] The court cited *Hall*, *Mosier*, *Longstreth*, and cases outside of the Tenth Circuit and determined that "a reading of *Longstreth* itself confirms that, far from being 'clearly established,' the law at the time of defendants' actions was distinctly unsettled."[48] The court thus found that qualified immunity had been properly applied by the district court and the plaintiff could not maintain a claim against the individual officials.

While the Tenth Circuit's finding in *Justus* that the law was not clearly established in the 1990s does not automatically mandate the same finding here, it is instructive because the current Tenth Circuit precedent is as unsettled as it was before *Longstreth* and *Justus*. Indeed, *Mosier*, *Longstreth*, and *Justus* show that while a prison grooming regulation can be facially valid, the regulation as applied to the plaintiff may be found unconstitutional after a highly factual inquiry. When the constitutionality of a case turns on such a fact-specific inquiry, it is more likely that

---

[46]25 F.3d 1057, 1994 WL 237513, at *1 (10th Cir. June 3, 1994).

[47]*Id.* at *2.

[48]*Id.*

the law is not clearly established such that every reasonable officer would know that the conduct violates the law.[49]

Additionally, it is not clear that this case falls squarely within the precedent of *Mosier* and *Longstreth*, where the court remanded for a fact-finding inquiry, instead of *Hall*, where the court found the regulation valid without requiring a fact-finding inquiry. This Court finds similarities between both lines of cases. Like in *Mosier* and *Longstreth*, the regulation here was implemented by officials at a prison instead of a temporary detention center. Like in *Hall*, however, Plaintiff is challenging the mandatory grooming policy and not the improper application of the regulation's exemption policy. Also like in *Hall*, the grooming policy here is not mandatory for all prisoners at all times but is limited to inmates transferring from the facility. This case seems to fall in the hazy border between reasonable restrictions on free exercise and unconstitutional conduct. And thus, the Court finds that Tenth Circuit precedent does not clearly establish that Defendants' conduct violated Plaintiff's First Amendment rights.

Without binding precedent clearly establishing the right at issue here, the plaintiff must show that the clearly established weight of authority from other courts demonstrates the violative nature of the Defendants' conduct.[50] But outside of the Tenth Circuit's binding precedent, cases are similarly murky. The District of Kansas precedent, for example, shows varied results. In *Wright v. Raines*, Judge Rogers found that a regulation prohibiting prisoners from wearing

[49]*See Brosseau v. Haugen*, 543 U.S. 194 (2004) ("These three cases taken together undoubtedly show that this area is one in which the result depends very much on the facts of each cases. . . . The cases by no means 'clearly establish' that [the defendant's] conduct violated the Fourth Amendment." (citation omitted)).

[50]*See Edison v. Owens*, 515 F.3d 1139, 1148 (10th Cir. 2008).

beards at any time was unconstitutional.[51] But later, in *Perry v. Davies*, Judge Saffels found that a regulation requiring inmates to shave their beard for photo identification purposes was constitutional.[52] Precedent from outside the Tenth Circuit is also varied. Some courts have found that prison regulations mandating haircuts could violate prisoners' First Amendment free exercise rights.[53] Other courts, however, including a majority of federal circuit courts, have found that prison hair grooming regulations requiring inmates to cut their hair did not violate the inmates' First Amendment free exercise rights because the regulations were reasonably related to legitimate penological concerns.[54] So while there is some precedential support for Plaintiff's claim, the precedent "falls short of what is necessary absent controlling authority: a robust 'consensus of cases of persuasive authority.'"[55] Thus, it is not "clearly established" that at the time of the challenged conduct the officials' conduct violated Plaintiff's First Amendment rights, and as such, Defendants are entitled to qualified immunity. Because Defendants are entitled to qualified immunity, Plaintiff cannot maintain his claim against them, and the Court must dismiss the action.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to

---

[51]457 F. Supp. 1082, 1089–90 (D. Kan. 1978) (using a stricter standard than the reasonably-related-to-a-legitimate-penological-interest standard than is now used after *Turner v. Safley*, 482 U.S. 78 (1987)).

[52]757 F. Supp. 1223, 1223–24 (D. Kan. 1991).

[53]*See, e.g.*, *Benjamin v. Coughlin*, 905 F.2d 571, 576–77 (2d Cir. 1990); *Shabazz v. Barnauskas*, 598 F.2d 345, 347 (5th Cir. 1979).

[54]*See, e.g.*, *Kuperman v. Wrenn*, 645 F.3d 69, 74–75 (1st Cir. 2011); *Cole v. Flick*, 758 F.2d 124, 131 (3d Cir. 1985); *Madison v. Johnson*, 12 F. App'x 149, 150 (4th Cir. 2001); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995); *Williams v. Wilkinson*, 134 F.3d 373, 1997 WL 809971, *3 (6th Cir. Dec. 18, 1997); *Fegans v. Norris*, 537 F.3d 897, 906 (8th Cir. 2008); *Henderson v. Terhune*, 379 F.3d 709, 715 (9th Cir. 2004); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

[55]*See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Dismiss (Doc. 62) is **GRANTED**.

**IT IS SO ORDERED**.

Dated: December 22, 2011

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE